# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# ANN ARBOR DIVISION

HOME POINT FINANCIAL
CORPORATION d/b/a HOMEPOINT,

       Plaintiff,

v.

AMRES CORPORATION,

       Defendant.

Case No. 5:23-cv-11515
Hon. F. Kay Behm

---

| | |
|---|---|
| PLUNKETT COONEY<br>By:   Erik Johnson (P85017)<br>38505 Woodward Avenue, Suite 100<br>Bloomfield Hills, MI 48304<br>(248) 433-2311<br>ejohnson@plunkettcooney.com<br><br>STITES & HARBISON PLLC<br>By:   Neal Baiilen<br>       Corey J. Dunn<br>323 East Court Avenue<br>Jeffersonville, IN 47130<br>(812) 282-7566<br>nbailen@stites.com<br>cdunn@stites.com<br>*Attorneys for Home Point Financial Corporation* | BODMAN PLC<br>By:   Michelle Kolkmeyer (P81355)<br>201 W. Big Beaver Road, Suite 500<br>Troy, MI 48084<br>(248) 743-6000<br>mkolkmeyer@bodmanlaw.com<br>*Attorneys for Defendant AmRes Corporation* |

## DEFENDANT AMRES CORPORATION'S ANSWER TO COMPLAINT, AND AFFIRMATIVE DEFENSES

Defendant AmRes Corporation, through its attorneys, Bodman PLC, responds to Plaintiff's Complaint as follows:

## PARTIES

1. Homepoint is a New Jersey corporation, with its principal place of business in Ann Arbor, Michigan.

**ANSWER: AmRes neither admits nor denies the allegations contained in this paragraph for lack of information or knowledge sufficient to form a belief as to the truth of the matter asserted.**

2. AmRes is a Pennsylvania corporation, with its principal place of business in Trevose, Pennsylvania. AmRes may be served with process through its registered agent, Incorp Services, Inc., 40600 Ann Arbor Road East, suite 200, Plymouth, MI 48170.

**ANSWER: Admitted.**

3. At all times relevant to this Complaint, Homepoint was in the business of, among other things, purchasing and reselling residential mortgage loans on the secondary market.

**ANSWER: AmRes admits only that, upon information and belief, Homepoint purchases and resells residential mortgage loans on the secondary market. AmRes neither admits nor denies the remaining allegations contained in this**

**paragraph for lack of information or knowledge sufficient to form a belief as to the truth of the matter asserted.**

4. At all times relevant to this Complaint, AmRes engaged in the business of originating, processing applications for, and preparing and arranging the closing and funding of residential mortgage loans.

**ANSWER: Admitted.**

5. On April 23, 2018, Homepoint and AmRes entered into a contract entitled "Correspondent Mortgage Loan Purchase Agreement" ("Correspondent Agreement"), a true and correct copy of which is attached as **Exhibit A** and incorporated herein by reference.

**ANSWER: AmRes admits only that on April 23, 2018, Homepoint and AmRes entered into a contract entitled "Correspondent Mortgage Loan Purchase Agreement". AmRes neither admits nor denies the remaining allegations contained in this paragraph for lack of information or knowledge sufficient to form a belief as to the truth of the matter asserted.**

## JURISDICTION AND VENUE

6. Section 21 of the Correspondent Agreement provides in pertinent part that the parties "agree that any litigation arising out of or relating hereto or the transactions and activities contemplated hereby shall be submitted or be brought in

3

Michigan. The parties hereto hereby agree to submit to the venue and jurisdiction of the federal and state courts located therein."

**ANSWER: The allegations in this paragraph appear to characterize a document, which speaks for itself. Answering further, AmRes states that the quoted portion of the Correspondent Agreement that appears in Paragraph 6 of Homepoint's Complaint is substantially, although not exactly, correct. Rather, Section 21 of the Correspondent Agreement provides, in relevant part:**

> **Purchaser and Correspondent hereby agree that any litigation arising out of or relating hereto or the transactions and activities contemplated hereby shall be submitted or be brought in Michigan. The parties hereto hereby agree to submit to the venue and jurisdiction of the state courts of Washtenaw County, Michigan or the U.S. District Court for the Eastern District of Michigan . . . .**

7. This Court has jurisdiction over AmRes because it has irrevocably submitted to the jurisdiction in the Correspondent Agreement. Additionally, this Court has jurisdiction over AmRes because it transacted business with Homepoint in the State of Michigan.

**ANSWER: The allegations contained in this paragraph are conclusions of law to which no response is required. To the extent a response is required, AmRes does not contest the jurisdiction of this Court.**

4

4878-9513-2789.v1

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because Home Point and AmRes are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs

**ANSWER: The allegations contained in this paragraph are conclusions of law to which no response is required. To the extent a response is required, AmRes denies that the amount in controversy exceeds $75,000, exclusive of interest and costs.**

9. Venue is proper in this Court pursuant to the terms of Correspondent Agreement.

**ANSWER: The allegations contained in this paragraph are conclusions of law to which no response is required. To the extent a response is required, AmRes does not contest venue in this Court.**

## STATEMENT OF FACTS

### I. The terms of the Correspondent Agreement

10. The Correspondent Agreement provides that Homepoint "has, from time to time, published and updated its Guidelines and Correspondent Seller Guide for correspondent lending . . . which set forth additional representations, covenants, warranties and rights of the Parties and the contents of those are specifically incorporated in this Agreement." Ex. A. at 1.

**ANSWER: The allegations in this paragraph appear to characterize a document, which speaks for itself. To the extent the quoted language that appears in Paragraph 10 of Homepoint's Complaint is inconsistent with the language of the Correspondent Agreement, AmRes denies the allegations as untrue.**

11. Section 7 of the Correspondent Agreement provides, in pertinent part:

[AmRes] unequivocally and unconditionally represents and warrants to [Homepoint] and agrees as follows as of the date of this Agreement. These representations, warranties and agreements shall remain binding upon [AmRes] during the term of this Agreement:

. . .

B. All Loan Packages and Closed Loans have been "originated," which is defined for purposes of this Agreement to mean conduct of the initial borrower interview and the obtaining of a completed Form 1003 Uniform Residential Loan Application by employees of [AmRes] licensed with the Nationwide Mortgage Licensing Systems ("NMLS") to originate residential mortgage loans for the appropriate state at the time the interview is conducted. [AmRes] further represents and warrants that each Loan Package or Closed Loan sold to [Homepoint] meets the applicable underwriting and other product eligibility requirements established by [Homepoint] for the Loans.

C. On all Loan Packages and Closed Loans, [AmRes] has complied with all provisions of the Seller Guide, the Guidelines, the Investor Guidelines, and all other covenants in this Agreement. [AmRes] has made full, truthful and accurate disclosure to [Homepoint] of all facts, information and documentation pertaining to its submission of any Loan Package or Closed Loan and is

        unaware, does not know or suspect, or have constructive notice of adverse circumstances or issues which could impact the integrity, salability or the ability of the Loans to be securitized by any agency or investor or which may otherwise have any bearing on [Homepoint's] decision to acquire the Loan Package or Closed Loan.

D.     All defects, errors, deviations, variations, irregularities and discrepancies, both actual and perceived, on all Loan Packages and Closed Loans have been fully and thoroughly investigated, resolved, cured and remediated by [AmRes] prior to submission to [Homepoint]. No conditions (including underwriting or closing conditions) or contingencies remain outstanding.

E.     The Loan Packages and Closed Loans submitted by [AmRes] to [Homepoint] do not contain any material or clerical errors, omissions, misrepresentations, untrue statements, falsified or incomplete documents or exhibits, misleading explanations, negligence, identity theft, fraud, or evidence of illegal activity or similar misconduct by [AmRes], its officers, agents and employees, the borrowers, seller, realtor, appraiser, title company, settlement/closing agent, home Inspector, builder or any other party involved in the Loan. Any evidence or instance, actual or circumstantial, of the existence of any prohibited conduct on any Loan Package or Closed Loan, without regard to the time sequenced of the date of discovery by [Homepoint], will result in the immediate issuance of a written repurchase demand, automatic termination of this Agreement and possible referral of any alleged civil or criminal misconduct to the appropriate authorities.

        . . .

Q.     All Loans comply with all Investor Guidelines as defined above, and any other agency or Investor Guidelines, regulations, directives and programs, as applicable. The Closed Loans and Loan Packages are eligible for purchase

7

4878-9513-2789.v1

        and/or the issuance of insurance by the applicable investor or agency, and if applicable, are eligible for securitization by GNMA.

    . . .

X.     The Loan was underwritten by [AmRes] in accordance with underwriting standards that are acceptable to Fannie Mae, Freddie Mac and GNMA, as applicable, and/or in accordance with [Homepoint's] guidelines in effect at the time the Loan was originated. Where applicable, the Loan was serviced in accordance with applicable Fannie Mae, Freddie Mac, FHA, VA, USDA and/or HUD requirements and industry standards. The Loan is saleable to Fannie Mae, Freddie Mac and GNMA, as applicable, on a non-recourse basis. The Note and Mortgage with respect to each Loan are on forms acceptable to Fannie Mae and Freddie Mac.

**ANSWER: The allegations in this paragraph appear to characterize a document, which speaks for itself. To the extent the quoted language that appears in Paragraph 11 of Homepoint's Complaint is inconsistent with the language of the Correspondent Agreement, AmRes denies the allegations as untrue.**

12.     Section 8 of the Correspondent Agreement provides, in pertinent part:

A.     <u>Indemnification</u>: [AmRes] shall indemnify, defend, and hold harmless [Homepoint], its affiliates, directors, officers, agents, and employees, successors and/or assigns, from and against any and all damages, losses, liability, costs, actions, causes of action, judgments, claims, demands, regulatory agency or governmental proceedings or investigations, investor repurchase demands or sanctions, attorneys' fees, court costs or expenses both direct and indirect, arising out of or related to (i)

8

>[AmRes's] breach of any representation, warranty or covenant set forth in this Agreement; (ii) [AmRes's] failure or omission to perform any obligation set forth in this Agreement; and (iii) any fraud (whether active fraud or fraudulent omission) or misrepresentation is found to exist in any Loan or any documents related to the Loan or utilized in any way during the origination process. In all actions brought by or involving third parties in which [Homepoint] has the right to be indemnified under this Paragraph, [Homepoint] shall have the complete and exclusive right to determine the conduct and defense of such legal proceeding or investigation with such third party including, without limitation, the right to compromise, settle, defend or continue any such action.

**ANSWER: The allegations in this paragraph appear to characterize a document, which speaks for itself. To the extent the quoted language that appears in Paragraph 12 of Homepoint's Complaint is inconsistent with the language of the Correspondent Agreement, AmRes denies the allegations as untrue.**

13. Section 10 of the Correspondent Agreement provides, in pertinent part:

    A. Repurchase Obligations. Notwithstanding any independent investigation or evaluation of a Loan by [Homepoint] prior to purchase, [Homepoint] may, in its sole and exclusive discretion, require [AmRes] to repurchase any Loan:

        i. That was underwritten by [AmRes] and/or originated in violation of any term, condition, requirement or procedure contained in this Agreement, the Program Requirements or the Seller's Guide in effect as of the date that [Homepoint] purchased such Loan;

9

      ii.    That was underwritten by [AmRes] and/or originated based on any materially inaccurate information or material misrepresentations made by a Borrower, or by [AmRes], [AmRes's] directors, officers, employees, agents, independent contractors and/or affiliates, or any other party providing information related to said Loan.

      . . .

      OR

      iv.    That must be repurchased from any secondary market investor (including but not limited to Fannie Mae, Freddie Mac, FHA, VA, HUD, GNMA or USDA) due to a breach by [AmRes] of any representation, warranty or covenant contained in this Agreement or a failure by Correspondent to comply in all material respects with the applicable terms, conditions, requirements and procedures included in the Program Requirements or Seller's Guide. When [Homepoint] must repurchase a loan from any secondary market investor regardless of the reason(s) and/or the merit(s) of any reason, [AmRes] must repurchase from [Homepoint] on demand without regard to any efforts [Homepoint] may or may have not taken directly or indirectly with any secondary market investor to mitigate repurchase;

      . . .

B.    Opportunity to Cure. [AmRes] will, upon notification by [Homepoint], correct or cure the defect identified by [Homepoint] with regard to a Loan within the time prescribed by [Homepoint] to the full and complete satisfaction of [Homepoint]. If, after receiving such notice from [Homepoint], [AmRes] is unable to correct or cure such defect within the prescribed time, [AmRes] shall, at [Homepoint's] sole discretion, either (1) repurchase such

10

> defective Loan from [Homepoint] at the Repurchase Price, or (ii) agree to such other remedies (including but not limited to additional indemnification and/or refund of a portion of the Purchase Price) as [Homepoint] may deem appropriate.  For this purpose, the "Repurchase Price" with regard to a defective Loan that is subject to repurchase under this section 10(b) means the sum of: (1) the unpaid principal balance of the Loan; (2) all accrued but unpaid interest due [Homepoint] the date of repurchase; (3) all expenses, including but not limited to reasonable attorneys' fees incurred by [Homepoint] in enforcing [AmRes's] obligation to repurchase such Loan; (4) any servicing expenses relating to the Loan, including any servicing advances made by [Homepoint] as servicer; and (5) any premiums paid to [AmRes] for purchase of the Loan.  If [Homepoint] requests a repurchase of a defective Loan, [AmRes] shall, within ten business days of [AmRes's] receipt of such repurchase request, pay to [Homepoint] the Repurchase Price by cashier's check or wire transfer of immediately available funds . . .

**ANSWER: The allegations in this paragraph appear to characterize a document, which speaks for itself. To the extent the quoted language that appears in Paragraph 13 of Homepoint's Complaint is inconsistent with the language of the Correspondent Agreement, AmRes denies the allegations as untrue.**

14. Section 19 of the Correspondent Agreement provides, in pertinent part:

Equitable Relief.  The remedies for a breach of the [AmRes]'s representations, warranties and covenants are unlimited both in law and equity at the sole and absolute discretion of [Homepoint], which may include, but is not limited to, injunctive relief on an ex parte basis to preserve [Homepoint's] interests.  [AmRes] agrees that a breach of this Agreement shall result in irreparable harm to [Homepoint].

11

**ANSWER: The allegations in this paragraph appear to characterize a document, which speaks for itself. To the extent the quoted language that appears in Paragraph 14 of Homepoint's Complaint is inconsistent with the language of the Correspondent Agreement, AmRes denies the allegations as untrue.**

15. Section 26 of the Correspondent Agreement provides, in pertinent part:

> Attorneys' Fees and Costs. [AmRes] acknowledges that [Homepoint] shall be entitled to recover all its reasonable attorneys' fees in the event that (a) [AmRes] breaches and Representation or Warranty set forth herein, (b) [Homepoint] is otherwise required to repurchase any Loan pursuant to Section 10 hereof, and/or (c) [Homepoint] is required to commence litigation to enforce any provision of this Agreement (in which event, [Homepoint] shall also be entitled to recover court costs).

**ANSWER: The allegations in this paragraph appear to characterize a document, which speaks for itself. To the extent the quoted language that appears in Paragraph 15 of Homepoint's Complaint is inconsistent with the language of the Correspondent Agreement, AmRes denies the allegations as untrue.**

II. **AmRes is obligated to repurchase the subject loan from Homepoint under the terms of the Correspondent Agreement.**

16. On or about March 3, 2022, Homepoint purchased a mortgage loan concerning a property located at 488 NE 18th St #3800, Miami, FL 33132, and

identified as Homepoint Loan Number XXXXXX0730 (the "Loan") from AmRes under the Correspondent Agreement.

**ANSWER: Admitted.**

17. Pursuant to the Correspondent Agreement, Homepoint maintains the right to, in its sole and exclusive discretion, require AmRes to repurchase any loan not in conformity with the terms of the Correspondent Agreement or when Homepoint is required to repurchase any loan from a secondary market investor. *See* Ex. A. at 12.

**ANSWER: The allegations in this paragraph appear to characterize a document, which speaks for itself. To the extent a response is required, AmRes denies the allegations as untrue.**

18. Section 5701.3 of the Seller/Servicer Guide for Federal Home Loan Mortgage Corporation ("Freddie Mac") provides that any "project that is a Condominium Hotel or similar type of transient housing" is ineligible for sale to Freddie Mac, including:

> "Projects and/or HOAs that are licensed (or have a designated licensed agent0, have a permit to operate, or are registered, as a type of trnasiet housing (e.g., vacation rental license, short term rental registrant, etc.) for the rental or non-HOA owned units' are "ineligible for sale to Freddie Mac" (**Section 5701.3(b)**) or

> "A project in which " (i) the HOA is named as a party to pending litigation or the Seller discovers that the HOA is a party to an Alternative Dispute Resolution (ADR) proceeding, such as arbitration

13

or mediation, or (ii) the project sponsor or developer is named as a party to pending litigation, or the Seller discovers that the project sponsor or developer is a party in an ADR proceding and, in either case, the dispute relates to the safety, structural soundness, functional use of habitability of the project." (**Section 5701.3(i)**).

**ANSWER: The allegations in this paragraph appear to characterize a document, which is not attached, and presumably speaks for itself. To the extent a response is required, AmRes denies the allegations as untrue.**

19.     Freddie Mac demanded repurchase of the Loan because the Loan was in violation of the guidelines, standards and requirements referenced in the Correspondent Agreement and Freddie Mac's Seller/Servicer Guide; specifically: (1) The property secured by the mortgage is a condominium hotel licensed as a type of transient housing in violation of Section 5701.3(b); and (2) The Homeowner's Association for the property is named a party to a lawsuit related to safety, structural soundness, functional use of habitability in violation of Section 5701.3(i).

**ANSWER: AmRes neither admits nor denies the allegations contained in this paragraph for lack of information or knowledge sufficient to form a belief as to the truth of the matter asserted.**

20.     As a result of the Loan Defects, Homepoint was forced to repurchase the Loan from Freddie Mac because it was not in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement and Freddie Mac's Seller/Servicer Guide.

**ANSWER: AmRes neither admits nor denies the allegations contained in this paragraph for lack of information or knowledge sufficient to form a belief as to the truth of the matter asserted.**

21. Homepoint sent notice of the Loan Defects and Homeponit's repurchase of the Loan to AmRes and demanded that AmRes cure the Loan Defects or repurchase the Loan as required under the terms of the Correspondent Agreement.

**ANSWER: AmRes neither admits nor denies the allegations contained in this paragraph for lack of information or knowledge sufficient to form a belief as to the truth of the matter asserted.**

22. Despite Homepoint's notice and demand, AmRes failed to cure the Loan Defects or repurchase the Loan as required under the terms of the Correspondent Agreement.

**ANSWER: AmRes denies the allegations contained in this paragraph as untrue.**

23. As a result of its failure to cure the Loan Defects or repurchase the Loan, AmRes has breached the Correspondent Agreement and caused damage to Homepoint.

**ANSWER: AmRes denies the allegations contained in this paragraph as untrue.**

24. AmRes's breaches of the Correspondent Agreement relating to the Loan have resulted in total amounts due to Homepoint in excess of $500,113.20, excluding interest, attorneys' fees, and other amounts AmRes owes to Homepoint.

**ANSWER: AmRes denies the allegations contained in this paragraph as untrue.**

## COUNT I: BREACH OF CONTRACT

25. Homepoint incorporates the allegations contained in Paragraphs 1 through 24 of this Complaint as if set forth fully herein.

**ANSWER:  AmRes incorporates by reference its responses to Paragraphs 1-24 above as if set forth fully herein.**

26. As set forth in greater detail above, AmRes is contractually obligated to repurchase from Homepoint any loan sold under the Correspondent Agreement which Homepoint was forced to repurchase from any secondary market investor or which is otherwise not in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement.

**ANSWER: AmRes denies the allegations contained in this paragraph as untrue.**

27. Homepoint was forced to repurchase the Loan from Freddie Mac because it did not conform to the applicable guidelines, standards and requirements.

**ANSWER: AmRes neither admits nor denies the allegations contained in this paragraph for lack of information or knowledge sufficient to form a belief as to the truth of the matter asserted.**

28. Homepoint has sent all required notices and satisfied all conditions precedent to AmRes's performance under the Correspondent Agreement.

**ANSWER: AmRes denies the allegations contained in this paragraph as untrue.**

29. AmRes breached the Correspondent Agreement when it delivered a loan that failed to conform to the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement and subsequently refused to cure the Loan Defects or repurchase it.

**ANSWER: AmRes denies the allegations contained in this paragraph as untrue.**

30. AmRes's breach of the Correspondent Agreement in relation to the Loan has caused Homepoint to incur damages in excess of $500,113.20, excluding interest, attorneys' fees, and other amounts AmRes owes to Homepoint.

**ANSWER: AmRes denies the allegations contained in this paragraph as untrue.**

4878-9513-2789.v1

31. Pursuant to the terms of the Correspondent Agreement, Homepoint is also entitled to recover its damages, reasonable attorneys' fees, expenses, and costs arising from AmRes's breaches of the Correspondent Agreement.

**ANSWER: AmRes denies the allegations contained in this paragraph as untrue.**

                                        Respectfully submitted,

                                        BODMAN PLC

                                        By: */s/Michelle Kolkmeyer*
                                                 Michelle Kolkmeyer (P81355)
                                        201 W. Big Beaver Road, Suite 500
                                        Troy, MI 48084
                                        (248) 743-6000
                                        mkolkmeyer@bodmanlaw.com
                                        *Attorneys for Defendant Amres Corporation*

August 16, 2023

## **AFFIRMATIVE DEFENSES**

Defendant AmRes Corporation, by its attorneys, Bodman PLC, for its affirmative defenses to Plaintiff Home Point Financial Corporation d/b/a Homepoint's Complaint, states as follows:

1. Homepoint's Complaint fails, in whole or in part, to state a claim upon which relief may be granted.

2. AmRes states that it did not engage in any act or omission that would justify an award of litigation expenses or attorney's fees, and Homepoint is otherwise not entitled to such an award.

3. Homepoint's damages, if any, were caused by the wilfull, negligent, and/or intentional acts of third parties, including Mitch Ayzenberg and Kirk Ayzenberg, and thus, AmRes cannot be held responsible or liable.

4. Homepoint's damages, if any, were caused by Homepoint's own acts and/or omissions and thus, AmRes cannot be held responsible or liable.

5. Homepoint failed to mitigate its damages, if any, as Homepoint has not presented that an alleged agreement between the parties contains a liquidated dmages clause, Plaintiff's case is barred by its failure to mitigate or attempt to mitigate its damages.

6. AmRes reserves the right to assert any additional affirmative defenses as may be disclosed during the course of discovery.

4878-9513-2789.v1

WHEREFORE, AmRes respectfully requests that this Court dismiss Homepoint's Complaint in its entirety and award AmRes its costs and fees incurred in having to defend this action.

                                                Respectfully submitted,

                                                BODMAN PLC

                                                By:   */s/Michelle Kolkmeyer*
                                                           Michelle Kolkmeyer (P81355)
                                                201 W. Big Beaver Road, Suite 500
                                                Troy, MI 48084
                                                (248) 743-6000
                                                mkolkmeyer@bodmanlaw.com
                                                *Attorneys for Defendant Amres Corporation*

August 16, 2023

4878-9513-2789.v1