UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
FLINT DIVISION

| | |
|---|---|
| **HOME POINT FINANCIAL CORPORATION d/b/a HOMEPOINT,**<br><br>      PLAINTIFF,<br><br>v.<br><br>**AMRES CORPORATION,**<br><br>      DEFENDANT. | CASE NO. 4:23-CV-11515-FKB-DRG |

### PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND SUPPORTING BRIEF

Plaintiff Nationstar Mortgage LLC d/b/a Mr. Cooper as successor in interest to Home Point Financial Corporation d/b/a Homepoint ("Plaintiff")[1] moves the Court for an Order enforcing the settlement agreement reached between Plaintiff and Defendant AmRes Corporation ("Defendant"; collectively with Plaintiff, the "Parties"). Pursuant to Local Rule 7.1, there was an extended telephonic conference between counsel for the parties in which the movant explained the nature of this

---

[1] Although Plaintiff merged with and into Nationstar Mortgage LLC d/b/a Mr. Cooper, Plaintiff may still maintain this action pursuant to Federal Rule of Civil Procedure 25(c), which provides: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3)." Fed. R. Civ. P. 25(c).

motion and its legal basis. The movant requested but did not obtain concurrence in the relief sought.[2]

The Parties settled this case when they agreed to the essential terms of a settlement on October 13, 2023. (*See* emails dated October 11 and October 13 attached collectively with other relevant emails as **Exhibit 1**, pp. 7–8.) After the Parties drafted and engaged in a series of revisions to nonessential terms in the proposed formal agreement, Defendant reneged on the settlement entirely.

Among other reasons, Defendant seeks to avoid the settlement because Mr. Cooper Group Inc. ("Mr. Cooper Group"), the parent company of Plaintiff's successor in interest, Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar" or "Mr. Cooper"), was identified as a party in the draft formal settlement agreement.

Defendant has rejected Plaintiff's effort to correct this issue by simply identifying "Nationstar Mortgage LLC d/b/a Mr. Cooper as successor in interest to Home Point Financial Corporation" as a party to the agreement instead of "Mr. Cooper Group Inc. as successor in interest to Home Point Financial Corporation."

Because Defendant agreed and is bound to the essential terms of its settlement with Plaintiff (n/k/a Mr. Cooper), Defendant cannot renege on this agreement and Plaintiff requests the Court enter an Order enforcing the settlement.

---

[2] The Parties also agree the confidentiality provision in the settlement agreement does not now prevent disclosure of settlement terms or require filing under seal.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
FLINT DIVISION

| | |
|---|---|
| **HOME POINT FINANCIAL CORPORATION d/b/a HOMEPOINT,**<br><br>PLAINTIFF,<br><br>v.<br><br>**AMRES CORPORATION,**<br><br>DEFENDANT. | CASE NO. 4:23-CV-11515-FKB-DRG |

### BRIEF IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT

Plaintiff asks the Court to enforce the binding settlement agreement reached between the Parties that Defendant attempts to avoid. Defendant complains, among other reasons, the parent company of Plaintiff's successor in interest was a named party in the proposed settlement agreement. These complaints are pretexts for Defendant's cold feet, and insufficient grounds for avoiding settlement as the Parties previously agreed to essential terms of settlement. Defendant also cannot undermine the settlement by arguing it never signed the formal agreement or certain details of a formal agreement have not been ironed out. The Parties' agreement to the essential terms is binding and sufficient for this Court to enforce the settlement.

### Summary of Facts

Plaintiff initiated this breach of contract action to recover $500,113.20 in damages caused by Defendant's breach for failure to repurchase a residential mortgage loan that Plaintiff was forced to repurchase from Federal Home Loan Mortgage Corporation. (Doc. 1, ¶¶ 16–31.) On August 24, 2023, Plaintiff's counsel offered a settlement on the following terms to Defendant through its counsel:

> As discussed the remaining shortage is ~$91,500. My client is willing to accept $80,000 to resolve this matter. Release, dismissal with prejudice, confidentiality, etc. Also worth noting this amount does not include incurred attorney fees which are recoverable under the contract. Call or email with response/counter.

(**Ex. 1**, p. 2: Email dated 08/24/23.)

On October 2, 2023, Plaintiff's counsel offered a payment plan for the $80,000 consideration as follows:

> We are good on the $80,000 settlement. Instead of $5K upfront and $75K on March 1, my client would prefer $5K per month before the remainder payment in March. Would this work?
>
> | | |
> |---|---|
> | 11/15/23 | $5,000.00 |
> | 12/15/23 | $5,000.00 |
> | 01/15/24 | $5,000.00 |
> | 02/15/24 | $5,000.00 |
> | 03/15/24 | $60,000.00 |

(**Ex. 1**, p. 3: Email dated 10/02/23.)

On October 11, 2023, Defendant's counsel responded:

> I just heard back from the client. Thanks for the follow up.
>
> -   November 3k

- December 3k
- January 3k
- February 3k
- March 3k
- April 15 – Balance 65k

Amres proposes the following payment plan. Obviously, we can paper the details of the settlement agreement but one point Amres is adamant on including is language that Amres disclaims any and all liability arising from this transaction and believes any and all liability is solely the responsibility of Kirk Ayzenberg.

Obviously, I do not expect Home Point to agree/attest to that statement but Amres wants to incorporate it in the agreement in some form. We can work on that language once we have an agreement in principle.

Let me know if this offer is acceptable.

(**Ex. 1**, p. 7**:** Email dated 10/13/23.)

On October 13, 2023, Plaintiff's counsel responded accepting the terms that Defendant would pay $80,000 to settle this action, which would be through five monthly installments of $3,000 plus a final payment of $65,000, by stating:

Acceptable. We are settled. Attached is draft settlement agreement. I know your client needs to retain ability to go after Ayzenburg so certainly expect/open to any proposed revisions you think may be necessary to preserve. I'd like to keep the confidentiality provision in some form but recognize this may be problematic given intent to go after Ayzenburg.

(*See* **Ex. 1**, p. 8: Email dated 10/13/23.)

Plaintiff's October 13 email included a proposed settlement agreement.

(*Id.* at pp. 8-12.) On October 13, 2023, Defendant's counsel asked: "Can you provide some documentation regarding the acquisition of HomePoint and something demonstrating that Mr. Cooper is a successor in interest?" (*See* **Ex. 1**, p. 13: Email dated 10/13/23.) In response, Plaintiff's counsel provided hyperlinks to Mr. Cooper Group's Form 8-K (Mr. Cooper Group Inc. (Form: 8-K, Received: 08/01/2023 08:58:25) (d18rn0p25nwr6d.cloudfront.net)) and Mr. Cooper Group's press release (Mr. Cooper Completes Acquisition of Home Point | Mr. Cooper Group (mrcoopergroup.com)). (**Ex. 1**, p. 13: Email dated 10/18/23.)

In subsequent revisions to the formal agreement, Defendant refused to release its claims against any successor-in-interest of Plaintiff, added a "Hold Harmless" provision where Plaintiff would hold Defendant harmless for any future claims made by any third party related to the loan referenced in the complaint,[3] and added language to the "Further Assurances" provision requiring Plaintiff to disclose all evidence it would have relied upon had the matter gone to trial. Plaintiff could not

---

[3] Plaintiff could not agree to a hold harmless provision and pointed to litigation between AmRes and its former principal (Ayzenburg), who was the borrower in the repurchased loan. Defendant had previously expressed its intent to seek recoupment of the settlement payment from Ayzenburg, and Plaintiff advised the hold harmless could make it responsible for any counterclaim. (**Ex. 1**, p. 21: Email dated 11/27/23; pp. 7-8: Emails dated 10/11/23 and 10/13/23.) Moreover, this action involves enforcement of the Correspondent Agreement and not the loan.

agree to these demands despite subsequent efforts to address these issues. (**Ex. 1**, pp. 14–31: Emails dated 11/3/23, 11/27/23, and 12/4/23.)

On December 14, 2023, Defendant's current counsel (who had yet to appear but did so after the withdrawal of Bodman PLC) declared the proposed formal settlement agreement "obsolete." (**Ex. 1**, p. 32: Email dated 12/14/23.) Since then, Defendant has reneged on the settlement entirely. (*See* Unfiled Response to Motion to Withdraw, which AmRes submitted to the Court without the assistance of counsel, attached without its exhibits as **Exhibit 2.**

Defendant's submission acknowledges it found the settlement terms "borderline financially acceptable" but reneges on the settlement because: (1) the proposed formal agreement "required all payments be made and release be given to non-party, entity named "Mr. Cooper" without any reference to or release from Homepoint . . . while Mr. Cooper and Homepoint refused to provide any assurances to Amres (such as hold harmless or indemnification), that another third party would not come claiming they hold the same loan note as a purchaser of the note from Homepoint or as a third party successor"; and (2) Mr. Cooper Group does not have an assignment for the loan. (**Ex. 2**, p. 5, ¶ 4-10 (e)-(g).)

Defendant's excuses for reneging on the settlement are belied by the draft language in the formal settlement that released Defendant of all claims by Mr. Cooper Group's subsidiaries (including Nationstar d/b/a Mr. Cooper), its

- 5 -

predecessors (including Homepoint), as well as its successors and affiliates (**Ex. 1**, pp. 10, 16, 27), and the assignment of all contractual rights to Mr. Cooper by operation of law. *See* Mich. Comp. Laws Ann. § 450.1724. Plaintiff has attempted to resolve these disagreements without filing this motion to enforce.[4]

## Law and Argument

Regardless of whether a formal settlement agreement is executed, parties are bound to the essential settlement terms to which they have agreed. *Remark LLC v. Adell Broad.*, 817 F. Supp. 2d 990, 1002–04 (E.D. Mich. 2011), *aff'd sub nom. Remark, LLC v. Adell Broad. Corp.*, 702 F.3d 280 (6th Cir. 2012) (rejecting argument that a signed settlement agreement is required for an enforceable settlement when the parties have otherwise agreed to the essential terms). Like all contracts, a settlement requires a "meeting of the minds on the essential terms of the

---

[4] On January 20, 2024, the Court granted the motion to withdraw filed by Defendant's prior counsel, Bodman PLC. At the conclusion of the hearing, the Court ordered Defendant to retain new counsel within 45 days and set a status conference for March 14. The Court further advised Plaintiff that it should not file a motion to enforce the settlement agreement before the status conference. On March 13, Mr. Filipovic filed an appearance despite Defendant's representation at the January 20 hearing that it would not be retaining Mr. Filipovic, who was involved in communications concerning the settlement agreement before Bodman filed its motion to withdraw. On March 19, Defendant issued written discovery targeted at obtaining information concerning Plaintiff's successor-in-interest as well as counsel's settlement communications with Bodman. Plaintiff responded to discovery on May 3. Plaintiff responded to discovery before filing this motion in the hope that its discovery responses would assuage Defendant's asserted issues with the settlement agreement and avoid the filing of this motion to enforce.

agreement." *Kloian v. Domino's Pizza L.L.C.*, 733 N.W.2d 766, 771 (Mich. Ct. App. 2006) (holding an attorney's email may constitute acceptance of an offer and result in a settlement).

Essential terms include "the parties to be bound, the amount agreed upon, and some form of consideration." *Strategic Staffing Sols., L.C. v. Urb. Armz, LLC*, No. 22-12216, 2023 WL 6449422, at *3 (E.D. Mich. Oct. 3, 2023) (quoting *Allstate Ins. Co. v. Broe*, No. 290133, 2010 WL 2867962, at *3 (Mich. Ct. App., July 22, 2010)). "[W]hen parties reach an agreement on all material terms, non-material tasks will not undermine the crux of the agreement." *Stewart v. Carter Machine Co., Inc.*, 82 F. App'x 433, 436 (6th Cir. 2003). Thus, a settlement may be binding "even if there are minor details missing." *Strategic Staffing*, 2023 WL 6449422 at *3 (collecting cases).

Defendant and Plaintiff agreed on the essential terms of settlement; namely, Defendant would make installment payments totaling $80,000 in satisfaction of the amount owed to Plaintiff, among the other terms of release, confidentiality, and dismissal with prejudice. (**Ex. 1**, pp. 2, 8: Emails dated 08/24/23 and 10/13/23.) *Compare Strategic Staffing*, 2023 WL 6449422 at *3 (finding an enforceable settlement when parties agreed that "Defendants will pay a sum of $150,000 to S3, with the first $50,000 due as a lump sum payment simultaneous with the execution of the agreement, and the remaining $100,000 paid as quarterly installments over the

course of two years" in exchange for a dismissal).

The remaining terms of the settlement (including those revised in the formal agreement) were nonessential, given the Parties agreed to iron out any such terms in the formal agreement should they reach a settlement. (**Ex. 1**, pp. 7–8: Emails dated 10/11/23 (Defendant's counsel: "Obviously, we can paper the details of the settlement agreement . . . . We can work on that language once we have an agreement in principle.") and 10/13/23 (Plaintiff's counsel: "I know your client needs to retain ability to go after Ayzenburg so certainly expect/open to any proposed revisions you think may be necessary to preserve. I'd like to keep the confidentiality provision in some form but recognize this may be problematic given intent to go after Ayzenburg"). *Compare McCormick v. Brzezinski*, No. 08-10075, 2010 WL 1463176, at *3 (E.D. Mich. April 13, 2010) (finding an enforceable settlement agreement where the parties agreed to "a rough time-frame for payment"); *Stout Tool Corp. v. Kane*, No. 291996, 2009 WL 4984463, at *4 (Mich. Ct. App., Dec 22, 2009) ("[E]ven though defendants' counsel acknowledged that the parties still had to 'iron out the details,' uncertainty regarding more minor details does not preclude an enforceable agreement.").

Now, Defendant has reneged on the settlement entirely because the draft agreement identified Mr. Cooper Group Inc. instead of Mr. Cooper. Defendant cannot use this issue as smokescreen for its cold feet given Plaintiff is entirely

willing to identify "Nationstar Mortgage LLC d/b/a Mr. Cooper as successor in interest to Home Point Financial Corporation" as a party to the settlement agreement instead of "Mr. Cooper Group Inc. as successor in interest to Home Point Financial Corporation."

Defendant cannot argue the terms of the settlement failed to protect it from the rights of a third party who may subsequently assert a claim under the Correspondent Agreement that is the basis of this breach of contract action. Even if such argument was sensible, each iteration of the draft agreement released Defendant from the claims of any successors, assigns, affiliates, subsidiaries, or predecessors (including Homepoint). (**Ex. 1**, pp. 9–12, 15–20, 25–31: Attachments to Emails dated 10/13/23, 11/3/23, and 12/4/23.) Specifically, Section 5 of the agreement, which went unrevised during negotiations, shows Mr. Cooper Group released claims on behalf of itself, its affiliates, subsidiaries, and predecessors:

> **5. Release by Mr. Cooper.** Mr. Cooper, on its own behalf and on behalf of its predecessors (including but not limited to Homepoint), successors, purchasers, affiliates, heirs, administrators, employees, assigns, officers, directors, managers, shareholders, parents, subsidiaries, agents, and/or any other representative(s) acting on its behalf, individually or in their corporate or personal capacity ("Releasors"), fully and globally releases AmRes, and its predecessors, successors, purchasers, affiliates, heirs, administrators, employees, assigns, officers, directors, managers, shareholders, parents, subsidiaries, agents, and/or any other representative(s) acting on its behalf, individually or in their corporate or personal capacity ("Released Parties"), from and against any liability, all claims, defenses, demands, actions, causes of action, damages, costs, expenses,

compensation, and any and all consequential damages, whether known or unknown, resulting directly or indirectly from the Loan, the Action, and any other matters relating directly or indirectly thereto that accrued prior to the effective date of this Agreement. The Releasors represent that, in the future, they will not file or cause to be filed any action or complaint against the Released Parties arising out of or relating to the Loan or the Action, except as may be necessary to enforce the terms of this Agreement. The Parties expressly reserve any rights and claims unrelated to the Loan.

(**Ex. 1**, pp. 25–31: Attachment to Email dated 12/4/23.)

Furthermore, Defendant cannot argue Mr. Cooper failed to acquire the contractual rights under the Correspondent Agreement when Michigan law deems these rights transferred by merger as a matter of law. *See* Mich. Comp. Laws § 450.1724 ("When a merger takes effect, all of the following apply: . . . (b) The title to all real estate and other property and rights owned by each corporation party to the merger are vested in the surviving corporation without reversion or impairment.").

Ultimately, Defendant cannot renege on its settlement. Any dispute raised by Defendant regarding revisions to the formal settlement agreement do not excuse Defendant from this settlement, because these details were not the essential terms of the settlement. (*See* **Ex. 1**, p. 7: Email dated 10/11/23 (contemplating additional written terms that would be "work[ed] on" after an agreement was reached).) A binding settlement exists between the Parties, and Plaintiff asks the Court to enforce the settlement against Defendant consistent with its essential terms.

## CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests this Court enter an Order enforcing the settlement against Defendant consistent with the Parties' agreement to the essential terms of this settlement.

*s/ Neal Bailen*
Neal Bailen
STITES & HARBISON PLLC
323 E. Court Avenue
Jeffersonville, IN  47130
Telephone:  (812) 282-7566
Email:  nbailen@stites.com

Erik Johnson
PLUNKETT COONEY
38505 Woodward Ave, Ste 100
Bloomfield Hills, MI  48304
Telephone:  (248) 433-2311
Email:  ejohnson@plunkettcooney.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on July 3, 2024, the foregoing document was served on all counsel of record through CM/ECF.

*s/ Neal Bailen*
Neal Bailen