UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
FLINT DIVISION

| | |
|---|---|
| HOME POINT FINANCIAL CORPORATION d/b/a HOMEPOINT, <br><br> PLAINTIFF, <br><br> v. <br><br> AMRES CORPORATION, <br><br> DEFENDANT. | CASE NO. 2:23-CV-11515-RJW-DRG |

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR LACK OF STANDING AND SUBJECT MATTER JURISDICTION**

Plaintiff Nationstar Mortgage LLC d/b/a Mr. Cooper as successor in interest to Home Point Financial Corporation d/b/a Homepoint ("Plaintiff" or "Mr. Cooper") opposes the Motion to Dismiss for Lack of Standing and Subject Matter Jurisdiction ("Motion to Dismiss") of Defendant AmRes Corporation ("AmRes"; collectively with Plaintiff, the "Parties").

This Court has subject matter jurisdiction over Plaintiff's claims and neither Mr. Cooper nor its predecessor, Homepoint, lack standing to pursue this action. In further support of this opposition, Plaintiff refers to and incorporates the grounds stated in its supporting brief and exhibit.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
FLINT DIVISION

| | |
|---|---|
| **HOME POINT FINANCIAL CORPORATION d/b/a HOMEPOINT,**<br><br>PLAINTIFF,<br><br>v.<br><br>**AMRES CORPORATION,**<br><br>DEFENDANT. | CASE NO. 2:23-CV-11515-RJW-DRG |

### BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO MOTION TO DISMISS FOR LACK OF STANDING AND SUBJECT MATTER JURISDICTION

AmRes argues Plaintiff's claims must be dismissed because (1) Homepoint and Mr. Cooper lack standing after Mr. Cooper acquired Homepoint by merger, (2) Mr. Cooper did not substitute as the party plaintiff in this action, and (3) the merger rendered Mr. Cooper's damages too speculative to exceed $75,000 for diversity jurisdiction. These arguments fail. First, Homepoint's merger did not alter its standing because standing is determined when the complaint is filed. By operation of the merger, Mr. Cooper succeeded to Homepoint's rights, including its standing at the outset of this action. Second, Rule 25(c) did not require Mr. Cooper, as the surviving company following the merger, to substitute as the plaintiff. Lastly, the amount in controversy is satisfied because the Complaint

states damages exceeding $75,000 and no law limits or reduces the alleged damages below this jurisdictional limit. For these reasons, AmRes's Motion to Dismiss must be denied.

## Summary of Relevant Facts and Procedural History

This action is for breach of a "Correspondent Mortgage Loan Purchase Agreement" (the "Correspondent Agreement") executed by Home Point Financial Corporation ("Homepoint") and AmRes in April 2018. Homepoint was in the business of purchasing and reselling residential mortgage loans on the secondary market. (ECF No. 1, PageID.2.) AmRes was in the business of originating mortgage loans. (ECF No. 1, PageID.2.) In March 2022, Homepoint purchased a particular loan from AmRes pursuant to the Correspondent Agreement. (ECF No. 1, PageID.9.)

AmRes breached the Correspondent Agreement because the loan did not comply with the applicable guidelines, standards, and requirements set forth in the Correspondent Agreement. (ECF No. 1, PageID.11–12.) Because the loan failed to meet those requirements, Homepoint was forced to repurchase the loan from Federal Home Loan Mortgage Corporation ("Freddie Mac"). (ECF No. 1, PageID.9–12.)

AmRes subsequently breached the Correspondent Agreement when it refused to repurchase the loan from Homepoint as obligated. (ECF No. 1,

PageID.9, PageID.11–12.) As a result of the breach, Homepoint incurred damages in excess of $500,113.20. (ECF No. 1, PageID.12.)

On June 26, 2023, Homepoint initiated this breach of contract action against AmRes to recover $500,113.20 in damages. (ECF No. 1, PageID.9–12.) On August 15, 2023, AmRes answered the Complaint, neither contesting personal jurisdiction nor venue. (ECF No. 7, PageID.47–48.)

On September 30, 2023, Homepoint merged with and into Mr. Cooper.[1] The Parties reached a settlement, but AmRes reneged. (ECF No. 21.) Plaintiff moved to enforce the settlement, which AmRes purportedly opposed based upon Mr. Cooper Group, Inc. being a party to the proposed settlement agreement. (ECF No. 21; ECF No. 22.) On January 15, 2025, AmRes moved to dismiss for lack of standing and subject matter jurisdiction, arguing: (1) Homepoint lacks standing and cannot continue as the named Plaintiff because it no longer exists; and (2) Mr. Cooper lacks standing and cannot satisfy the amount in controversy requirement for diversity jurisdiction.

---

[1] A true and accurate copy of the Certificate of Merger is attached hereto as **Exhibit 1**.

## Law and Argument[2]

When moving to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a defendant can either make a facial challenge ("question[ing] merely the sufficiency of the pleading") or a factual challenge ("raising a factual controversy" that requires a "district court to weigh the conflicting evidence" to determine the factual basis for jurisdiction). *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

Although AmRes does not state whether it makes a facial or factual challenge, AmRes clearly makes a facial challenge because its primary exhibit is the Complaint and it argues Plaintiff failed to allege jurisdictional facts. (ECF No. 32, PageID.234–235, PageID.239–42; ECF No. 32-1.); *see United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) ("A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction."). Submitting the draft disclosure statement prepared by counsel does not make AmRes's motion a factual challenge. (ECF No. 32-2.) After all, AmRes introduced the disclosure statement as evidence of the merger between Mr. Cooper and Homepoint, but this merger is a

---

[2] AmRes reiterates throughout its motion that Plaintiff has not filed an amended disclosure statement pursuant to Rule 7.1. However, Rule 7.1 is independent of the obligation to plead jurisdiction to survive dismissal. *See* Fed. R. Civ. P. 7.1 cmt. ("The disclosure does not relieve a party that asserts diversity jurisdiction from the Rule 8(a)(1) obligation to plead the grounds for

matter of public record (*see* Certificate of Merger attached as Exhibit 1) that is properly considered under AmRes's otherwise facial challenge to subject matter jurisdiction. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (employing similar safeguards to those for a Rule 12(b)(6) motion to dismiss); *see Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (considering public records on a Rule 12(b)(6) motion to dismiss). Furthermore, the existence of the merger is not a factual controversy, as both Plaintiff and AmRes agree that Homepoint merged with and into Mr. Cooper after the initiation of this lawsuit. (*Compare* Ex. 1 *with* ECF No. 32, PageID.236.) Therefore, the Motion to Dismiss is a facial challenge to subject matter jurisdiction.

When a defendant makes a facial challenge for lack of subject matter jurisdiction or standing, as AmRes does here, a court must accept all material allegations of the complaint as true and construe the allegations in plaintiff's favor. *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 710 (6th Cir. 2015). Plaintiff's allegations of jurisdictional facts sufficiently assert standing and diversity jurisdiction.

---

jurisdiction, but is designed to facilitate an early and accurate determination of jurisdiction."). AmRes does not cite any authority interpreting Rule 7.1 as authorizing dismissal.

1. <u>**Neither Homepoint nor Mr. Cooper lack standing to bring these claims, and this action may continue in the name of Homepoint.**</u>

To establish a case or controversy under Article III, a plaintiff must establish its standing, that is: "(1) an injury in fact that is (2) fairly traceable to the defendant's conduct and (3) likely to be redressed by a favorable judicial decision." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 555 (6th Cir. 2021). To establish standing at the pleadings stage, it is sufficient to make general allegations of an injury resulting from defendant's conduct. *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 710–11 (6th Cir. 2015).

An injury in fact (the first prong of Article III standing) is "a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Nader v. Blackwell*, 545 F.3d 459, 471 (6th Cir. 2008) (quoting *Steel Co. v. Citizens For a Better Environment*, 523 U.S. 83, 103 (1998)). One of the "most obvious" concrete harms is monetary damages. *Ward v. NPAS, Inc.*, 63 F.4th 576, 580 (6th Cir. 2023) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)). For the second prong (causation), although a superseding cause may deem a defendant's conduct not the proximate cause of an injury with respect to the merits of a dispute, a fairly traceable injury for standing "need not be proximate" and may be the result of an indirect, attenuated line of causation. *Parsons*, 801 F.3d at 713; *see People v. Schaefer*, 703 N.W.2d 774, 785 (Mich.

2005) (discussing superseding cause). For the third prong (redressability), an injury is redressable if the remedy provides substantial and meaningful relief to the plaintiff. *Id.* at 715–16. Monetary damages are substantial and meaningful relief for a past harm. *See Nader*, 545 F.3d at 472; *see also Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) ("Past harm allows a plaintiff to seek damages"). As demonstrated below, these prongs are satisfied.

(a) <u>Homepoint did not lack standing to bring this action.</u>

Homepoint did not lack standing when it filed this lawsuit and it may continue as the named Plaintiff despite the merger. AmRes argues Homepoint lacks standing because Homepoint (1) has not existed since the merger in August 2023[3] and (2) was not "forced" to repurchase the loan from Freddie Mac, but made a "business decision" not to contest the repurchase demand instead. (ECF No. 32, PageID.238–40.) AmRes further argues for dismissal under a belief Rule 25(c) required Mr. Cooper to substitute for Homepoint following the merger. (ECF No. 32, PageID.238.)

First, "[s]tanding is determined at the time the complaint is filed." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 580 (6th Cir. 2012). Homepoint

---

[3] AmRes mistakes the date of Homepoint's merger with the merger date of its parent company, which was the merger described in the draft amended disclosure statement. Homepoint's merger with and into Mr. Cooper took effect on September 30, 2023, but this discrepancy is immaterial

filed this action prior to its merger with and into Mr. Cooper. (*Compare* ECF No. 1 *with* Ex. 1.) Therefore, Homepoint's post-merger existence has no bearing on whether it had standing.

Second, AmRes's argument that Homepoint was not "forced" but rather made a "business decision" to repurchase the loan from Freddie Mac is neither supported by the facts alleged (which must be accepted as true) nor the Correspondent Agreement itself. In the Correspondent Agreement, AmRes warranted the loan was free of the defects that caused Homepoint's repurchase of the loan from Freddie Mac. (ECF No. 1, PageID.3–11; ECF No. 1-1, PageID.29–30.) Furthermore, the Correspondent Agreement obligated AmRes to repurchase the loan if Homepoint repurchased the loan from Freddie Mac, "regardless of the reason(s) and/or the merit(s) of any reason" for Homepoint's repurchase and "without regard to any efforts [Homepoint] may or may not have taken directly or indirectly with any secondary market investor to mitigate repurchase[.]" (ECF No. 1, PageID.6–8; ECF No. 1-1, PageID.25.) Therefore, AmRes's repurchase obligation existed regardless of any "business decision" (i.e., reason) not to contest Freddie Mac's repurchase demand.

Despite its repurchase obligation, AmRes refused to repurchase the loan, resulting in Homepoint incurring $500,113.20 in damages. (ECF No. 1, PageID.3–

for the purposes of this briefing since both mergers occurred after Homepoint filed this lawsuit.

11; ECF No. 1-1, PageID.29–30.) Homepoint sought such damages (an injury in fact) to redress its loss. The sole cause of these contractual damages is AmRes's failure to provide a loan compliant with investor guidelines, rules, and regulations, and its subsequent failure to repurchase the loan. Undoubtedly, there is a line causation between AmRes's misconduct and Homepoint's contractual damages, which is all that is necessary for the causation prong of standing. *Parsons*, 801 F.3d at 713.

AmRes mistakenly believes that Rule 25(c) required substitution of Mr. Cooper post-merger. Although Homepoint ceased to exist when it merged with and into Mr. Cooper, Plaintiff may still maintain this action in Homepoint's name pursuant to Federal Rule of Civil Procedure 25(c), which provides: "If an interest is transferred, **the action may be continued by or against the original party** unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." (emphasis added).[4] By its plain language, Rule 25(c) does not require substitution of a successor in interest and permits the original party to maintain the suit. Fed. R. Civ. P. 25(c) ("[T]he action **may** be continued by . . . the original party" (emphasis added)). The Sixth Circuit and other federal courts have confirmed this plain meaning: "Rule 25(c) does not require that

anything be done after an interest has been transferred." *Blachy v. Butcher*, 221 F.3d 896, 911 (6th Cir. 2000) (quoting *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993)).

  (b) <u>Mr. Cooper does not lack standing as the successor by merger to Homepoint.</u>

AmRes argues Mr. Cooper lacks standing because (1) there is no "Assignment" of Homepoint's claim to Mr. Cooper and (2) the cause of Mr. Cooper's injury was its acquisition of Homepoint, not AmRes's breach of the Correspondent Agreement. (ECF No. 32, PageID.238.) These arguments fail as a matter of both Michigan and Delaware law (the place of merger). When Mr. Cooper acquired Homepoint by merger, Mr. Cooper succeeded by operation of law to all contractual rights of Homepoint, including the rights under the Correspondent Agreement that are asserted in this lawsuit. Mich. Comp. Laws Ann. § 450.4704(b) ("All property, real, personal, and mixed, all debts due on whatever account, including promises to make contributions, all other choses in action, and any other interest of or belonging to or due to each constituent company are vested in the surviving company without further act or deed and without reversion or impairment."); *P.C. Connection, Inc. v. Synygy Ltd.*, No. CV 2020-0869-JTL, 2021 WL 57016, at *15 (Del. Ch. Jan. 7, 2021) ("As a result of

---

[4] Rule 25(c) applies to this case because a "transfer of interest" includes a merger between

the merger, any contractual rights and obligations that [merging company] possessed under the [contract] survived as contractual rights and obligations of [the surviving company]"); *see* Del. Code Ann. tit. 6, § 18-209(g) ("When any merger or consolidation shall have become effective . . . , all of the rights, privileges and powers of each of the domestic limited liability companies and other business entities that have merged or consolidated, and all property, real, personal and mixed, and all debts due to any of said domestic limited liability companies and other business entities, as well as all other things and causes of action belonging to each of such domestic limited liability companies and other business entities, shall be vested in the surviving or resulting domestic limited liability company or other business entity"); *see also In re Lee*, 467 B.R. 906, 916–17 (B.A.P. 6th Cir. 2012) (analyzing Delaware law to determine the resulting company "stepped into the shoes" of the merged company with "the right to enforce obligations owing to" the merged company).

By operation of the merger, Mr. Cooper has a "legally cognizable right" under the Correspondent Agreement and in this action. *Parsons*, 801 F.3d at 710–11. This legally cognizable right is to redress the same injury suffered by Homepoint for AmRes's breach of the Correspondent Agreement, which occurred

---

companies. *See Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993) (collecting cases).

before Mr. Cooper's acquisition. *In re Lee*, 467 B.R. 906, 916–17 (B.A.P. 6th Cir. 2012) (holding a surviving company steps into the shoes of the merged company). Because Mr. Cooper's acquisition was after the breach, the merger and acquisition could not have caused Mr. Cooper's injury in this case. Even if the merger and acquisition could be deemed a superseding cause as AmRes would have this Court believe (which it cannot), there would still exist a line of causation between the contractual damages and AmRes's failure to provide a defect-free loan and repurchase its defective loan. Therefore, Mr. Cooper has standing.

2. **Plaintiff has satisfied the amount in controversy requirement for diversity jurisdiction.**

"In a federal diversity action, the amount alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990). Alleging damages in excess of $75,000 is sufficient for diversity jurisdiction unless the damages alleged are not recoverable as a matter of state law. *Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 (6th Cir. 2000) (finding a claim is less than the jurisdictional amount when "applicable state law bar[s] the type of damages sought by plaintiff" (quoting *Wood v. Stark Tri–County Bldg. Trades Council*, 473 F.2d 272, 274 (6th Cir.1973)); *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 627–28 (6th Cir. 2009) (observing that legal certainty test is met "when a

specific rule of substantive law or measure of damages limits the amount of money recoverable by the plaintiff" (quoting 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3702, at 98–99 & n. 88 (3d ed. 1998 & Supp. 2008)). "Dismissal for lack of subject matter jurisdiction is proper where the pleadings themselves reveal to a legal certainty that the plaintiff cannot recover enough to satisfy the required amount in controversy." *Holland v. Lowe's Home Centers, Inc.*, 198 F.3d 245 (6th Cir. 1999); *see also Cook v. Payne*, No. CIV.A. 4:05CV-176, 2006 WL 626403, at *2 (W.D. Ky. Mar. 8, 2006) ("Only in the unusual case where it is certain that a plaintiff cannot possibly recover the jurisdictional amount will a court disregard the plaintiff's prayer for relief.").

Similar to its lack of standing argument, AmRes argues Mr. Cooper's acquisition of Homepoint renders the amount in controversy too attenuated and speculative to exceed $75,000. (ECF No. 32, PageID.241.) Specifically, AmRes reasons that Homepoint's $500,113.20 loss would have caused Mr. Cooper to lower its purchase price of Homepoint. (ECF No. 32, PageID.241.) However, whether the amount in controversy requirement has been met is determined at the time of filing the complaint. *Rosen*, 205 F.3d at 921; *see also Charvat*, 561 F.3d at 627–28 (noting that events after filing the complaint that reduce the amount in controversy do not affect jurisdiction). Thus, the amount in controversy for Mr. Cooper is the same as it was for Homepoint when it filed this action ***prior to the***

*merger*. *Rosen*, 205 F.3d at 921. Because Homepoint alleged $500,113.20 in damages when filing this action, the amount in controversy is satisfied, unless those alleged damages are not recoverable under Michigan law.

The contractual damages stated in the Complaint are not limited or subject to reduction under Michigan law. Under Michigan law, the "damages recoverable for a breach of contract are those arising naturally from the breach or those which were within the parties' contemplation at the time of contracting." *Butt v. Detroit Auto. Inter-Ins. Exch.*, 341 N.W.2d 474, 476–77 (Mich. App. 1983).[5] Given their agreement that AmRes would repurchase a loan under certain circumstances (ECF No. 1, PageID.6–11; ECF No. 1-1, PageID.25–26), the Parties contemplated that Homepoint would suffer damages for the repurchase amount (here, $500,113.20) as a result of any failure by AmRes to repurchase a loan. Michigan law has some limitations on contractual damages, but those limitations are not applicable to this contract claim and do not reduce the contractual damages sought. *See e.g.*, *Kewin v. Massachusetts Mut. Life Ins. Co.*, 295 N.W.2d 50, 53–55 (Mich. 1980) (generally limiting "damages to the monetary value of the contract had the breaching party fully performed" and finding mental distress and exemplary damages are generally not recoverable).

---

[5] The Correspondent Agreement is governed by Michigan law. (ECF No. 1-1, PageID.32.)

AmRes does not and cannot argue there are legal limits on Plaintiff's damages. Even if the Court considered AmRes's "lower price" theory as some sort of defense based upon mitigation principles, it would have no impact here as any defenses, even those apparent from the face of the complaint, are not considered when determining whether the amount in controversy requirement has been satisfied. *Smithers v. Smith*, 204 U.S. 632, 642 (1907) (alleging damages in excess of amount in controversy is sufficient regardless of whether the face of the complaint shows a defense exists to reduce the damages below the jurisdictional amount). Because Michigan law does not limit or reduce Plaintiff's damages below $75,000, the $500,113.20 damages stated in the Complaint is the amount in controversy, far exceeding the requirement for diversity jurisdiction.[6] AmRes's argument for dismissal based upon a failure to establish the amount in controversy

---

[6] AmRes argues Plaintiff incorrectly alleged a contractual basis for subject matter jurisdiction (ECF No. 32, PageID.235–37), but this is not true; rather, Plaintiff alleged a contractual basis for personal jurisdiction and venue. (ECF No. 1, PageID.2–3.) AmRes conflates subject matter jurisdiction with personal jurisdiction and venue throughout its brief, which is further demonstrated by AmRes suggesting jurisdiction does not exist because Mr. Cooper is not a citizen of Michigan and did not contract with AmRes in Michigan. (ECF No. 32, PageID.236–37.) Whether Mr. Cooper is a citizen of Michigan has no bearing on diversity of citizenship, because AmRes is not a citizen of Michigan and does not have the same citizenship of Mr. Cooper or Homepoint. To the extent AmRes is attempting to squeeze arguments regarding lack of personal jurisdiction and venue into its subject matter jurisdiction motion, such defenses have long been admitted and/or waived. When it answered the Complaint, AmRes admitted that it "does not contest the jurisdiction of this Court" and "does not contest venue in this Court." (ECF No. 7, PageID.47–48.) Even without these admissions, AmRes's failure to challenge personal jurisdiction and venue waived the right to object as a matter of law. Fed. R. Civ. P. 12(h)(1); *Taubman Co. v. Webfeats*, 319 F.3d 770, 773 (6th Cir. 2003) ("[A] challenge to personal jurisdiction must be raised in the first responsive pleading or be waived."); *Whittington v. Milby*, 928 F.2d 188, 192 (6th Cir. 1991) ("It is true that improper venue is a personal defense which is waived if not raised either by motion or in a responsive pleading."). Therefore, AmRes's

fails.

## CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests this Court deny AmRes's Motion to Dismiss. Should the Court desire Mr. Cooper substitute for Homepoint as the plaintiff in this action, Plaintiff requests leave to substitute pursuant to Rule 25(c).

*s/ Neal Bailen*
Neal Bailen
STITES & HARBISON PLLC
323 E. Court Avenue
Jeffersonville, IN  47130
Telephone:  (812) 282-7566
Email:  nbailen@stites.com

Erik Johnson
PLUNKETT COONEY
38505 Woodward Ave, Ste 100
Bloomfield Hills, MI  48304
Telephone:  (248) 433-2311
Email:  ejohnson@plunkettcooney.com
*Counsel for Plaintiff*

---

personal jurisdiction and venue challenges, just like its subject matter jurisdiction challenge, are meritless.

- 18 -

## CERTIFICATE OF SERVICE

I certify that on January 29, 2024, the foregoing document was served on all counsel of record through CM/ECF.

*s/ Neal Bailen*
Neal Bailen
