UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Home Point Financial Corporation, <br><br> Plaintiff, <br><br> v. <br><br> Amres Corporation, <br><br> Defendant. | Case No. 23-cv-11515 <br><br> Honorable Robert J. White |

**ORDER DENYING MOTION TO DISMISS (ECF No. 31) AND GRANTING MOTION TO AMEND/CORRECT (ECF No. 32)**

Plaintiff Home Point Financial Corporation (Homepoint) sued Defendant Amres Corporation (Amres) for breach of contract after Amres failed to cure, correct, or buyback a defective loan it sold Homepoint. (ECF No. 1, PageID.11–12). Presently before the Court is Amres' motion to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1). (ECF No. 31).

According to Amres, Homepoint lacks standing to continue the lawsuit as it no longer exists. (ECF No. 31, PageID.215).  That is, after Homepoint brought its claim against Amres, it merged with and into Nationstar Mortgage LLC d/b/a Mr. Cooper (Mr. Cooper). (ECF No. 33-1, PageID.279).  Because the Homepoint that brought the lawsuit is not a standalone entity, it legally cannot function as a plaintiff

here. (ECF No. 31, PageID.213). And as Homepoint's alleged successor in interest, Mr. Cooper is unable to maintain Homepoint's claim because (1) Mr. Cooper was not substituted as the named plaintiff; (2) Mr. Cooper otherwise lacks standing; and (3) Mr. Cooper does not satisfy federal diversity jurisdiction requirements. (ECF No. 31, PageID.211–17).

In response, Homepoint argued that it met the standing and jurisdictional requirements at the time of filing such that Mr. Cooper may properly continue the lawsuit as Homepoint's successor in interest. (ECF No. 33, PageID.266–73). And given that Mr. Cooper is a successor in interest, and not a party to the action, it is not necessary for the Court to determine whether it has standing or satisfies diversity jurisdiction. (*Id.* at PageID.269–73). As a result, the Court should deny Amres' motion. (*Id.* at PageID.275).[1]

---

[1] To note, although Amres' filing is clearly a motion to dismiss, Amres initially filed it on the docket as a motion for summary judgment. *See* ECF No. 31. Amres then refiled the same motion and indicated in the docket entry that it moved to amend/correct its summary judgment motion to a motion to dismiss. *See* ECF No. 32. The actual filing contained the same motion to dismiss as in ECF No. 31, but no separate motion to amend/correct. *See id.* Although the Court cannot change fully the caption of the original docket entry, the Court will grant the motion to amend/correct (ECF No. 32) and will modify the caption to indicate that ECF No. 31 is considered a motion to dismiss. The Court will therefore construe ECF No. 31 as Amres' motion to dismiss.

The parties briefly addressed the merits of Amres' motion to dismiss at the February 10, 2025 hearing on the motion to enforce the settlement agreement (ECF No. 21). (ECF No. 36). At the hearing, the Court expressed skepticism about Amres' claim that Homepoint lacked subject matter jurisdiction, but offered Amres the opportunity to file supplemental briefing to further explain its argument. Amres filed its supplemental brief shortly thereafter. (ECF No. 37).

The Court reviewed Amres' supplemental brief but finds that the issues it raised with Amres' motion at the hearing persist. Accordingly, the Court does not believe that a further hearing is necessary to resolve the motion. Thus, for the reasons explained below, the Court will deny Amres' motion to dismiss (ECF No. 31).

## I.   Background

Homepoint is a New Jersey corporation with its principal place of business in Ann Arbor, Michigan. (ECF No. 1, PageID.1). As part of its business, Homepoint purchased and resold residential mortgage loans on the secondary mortgage market. (*Id.* at PageID.2). Amres is a Pennsylvania corporation with its principal place of business in Trevose, Pennsylvania. (*Id.* at PageID.1). At all times relevant to the complaint, Amres originated, processed applications for, and prepared and arranged the closing and funding of residential mortgage loans. (*Id.* at PageID.2).

On April 23, 2018, Homepoint and Amres entered into a contract titled "Correspondent Mortgage Loan Purchase Agreement" (Correspondent Agreement). (*Id.*; ECF No. 1-1, PageID.14). The Correspondent Agreement functioned as an umbrella agreement that governed loan purchases by Homepoint from Amres and defined the duties, responsibilities, and obligations of each party related thereto. (ECF No. 1, PageID.3–4; ECF No. 1-1, PageID.14). Under the Correspondent Agreement, Amres warranted that it "fully and thoroughly investigated, resolved, cured and remediated" all loan defects before submission to Homepoint. (ECF No. 1-1, PageID.17). Amres also represented that all of its loans complied with Investor Guidelines, were underwritten according to standards acceptable to the Federal Home Loan Mortgage Corporation (Freddie Mac), among other federal agencies, and were saleable to Freddie Mac on a non-recourse basis. (*Id.* at PageID.21–22). The Correspondent Agreement defined "Investor Guidelines" as "agency and investor guidelines and requirements" including those of Freddie Mac and "any other investor to whom [Homepoint] may transfer a mortgage loan." (*Id.* at PageID.14).

In addition to Amres' representations and warranties, the Correspondent Agreement featured an indemnification provision which obligated Amres to indemnify Homepoint for all damages caused by Amres' breach of the Correspondent Agreement or "failure or omission to perform any obligation set

4

forth" in the Correspondent Agreement. (*Id.* at PageID.23–24). The Correspondent Agreement authorized Homepoint to require Amres to repurchase loans sold to Homepoint if the loans, as underwritten by Amres, violated the terms of the Correspondent Agreement, or if a secondary market investor such as Freddie Mac obligated Homepoint's repurchase of the loan due to Amres's breach of its representations or warranties. (*Id.* at PageID.25). In the event Homepoint identified a defect with a loan, the Correspondent Agreement obligated Amres to correct or cure said defect within the time prescribed by Homepoint. (*Id.* at PageID.26). If Amres could not correct or cure the defect, Homepoint could require Amres to repurchase the loan. (*Id.*).

As relevant to the dispute here, on or about March 3, 2022, Homepoint purchased a mortgage loan for a property located at 488 NE 18th #3800, Miami, FL 33132 (the Loan) from Amres under the Correspondent Agreement. (ECF No. 1, PageID.9). At some point afterwards, the Loan switched hands to Freddie Mac. (*Id.* at PageID.10). But after acquiring the Loan, Freddie Mac claimed that it violated the guidelines, standards and requirements in the Correspondent Agreement and Freddie Mac's Seller/Servicer Guide. (*Id.* at PageID.9–10). The violations specifically consisted of the following: (1) the property secured by the Loan was a condominium hotel licensed as a type of transient housing and (2) the Homeowner's Association for the property was named a party to a lawsuit related to safety,

5

structural soundness, functional use or habitability. (*Id.* at PageID.10). Because of the Loan's defects, Freddie Mac allegedly forced Homepoint to repurchase the Loan. (*Id.* at PageID.10). Homepoint then notified Amres of the defects and the forced buyback and requested that Amres cure the defects or repurchase the Loan as outlined in the Correspondent Agreement. (*Id.*).

But Amres failed to cure the defects or repurchase the Loan. (*Id.*). As a result, Homepoint sued Amres alleging breach of the Correspondent Agreement. (*Id.* at PageID.11). Homepoint claimed damages in excess of $500,113.20 excluding interest, attorney's fees, and other amounts owed by Amres to Homepoint. (*Id.*). As critical to the present dispute, after Homepoint filed its lawsuit, it merged with and into Nationstar Mortgage LLC d/b/a Mr. Cooper (Mr. Cooper).[2] (ECF No. 33, PageID.262; ECF No. 33-1, PageID.279). At issue, based on Amres's motion to dismiss, is whether Mr. Cooper can continue the lawsuit on Homepoint's behalf.

**II.      Legal Standard**

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Overall, the plaintiff carries the burden of proving jurisdiction to survive a Rule 12(b)(1) motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

---

[2] Mr. Cooper is a Delaware limited liability company with its principal place of business in Texas. (ECF No. 33-1, PageID.279).

Courts typically characterize Rule 12(b)(1) motions as either a "facial attack or a factual attack" on subject matter jurisdiction. *Am. Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). A facial attack "merely questions the sufficiency of the pleading" in alleging subject matter jurisdiction. *Ohio Nat'l Life. Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In reviewing a facial attack, "the court must take the material allegations" in the complaint as true and construe them "in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). But if the motion to dismiss challenges the factual existence of subject matter jurisdiction, "no presumptive truthfulness applies" to the complaint's factual allegations. *Ohio Nat'l*, 922 F.2d at 325. Instead, "the district court must [] weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.*; *see also Am. Telecom*, 501 F.3d at 537.

## III. Analysis

The Court finds that Amres launched a facial attack on subject matter jurisdiction through its Rule 12(b)(1) motion. The parties did not dispute that a merger occurred or that Mr. Cooper absorbed Homepoint such that Homepoint no longer exists as an independent entity. (ECF No. 31, PageID.210–11; ECF No. 33, PageID.263–64; ECF No. 33-1, PageID.278–79). Rather, Amres argued that the

pleadings did not establish standing sufficient for the claim to survive dismissal. (ECF No. 31, PageID.214–415).

To start, Amres claimed that Homepoint offered no proof that Freddie Mac forced Homepoint to buyback the defective Loan. (*Id.*). Without such proof, it is unclear whether Homepoint suffered an injury in fact or simply made a business decision not to contest Freddie Mac's conclusion about the Loan's defects. (*Id.* at PageID.215). Even if Homepoint had standing initially, its failure to substitute Mr. Cooper as the named plaintiff or assign its claim to Mr. Cooper following the merger warrants dismissal. (*Id.* at PageID.215–17). And in the event Mr. Cooper did assume the role of plaintiff, it could not independently satisfy standing or jurisdictional requirements based on the complaint. (*Id.*; ECF No. 37, PageID.292–96). The Court is thereby devoid of subject matter jurisdiction no matter how it interprets the pleadings or the effect of the Merger on the claim. (ECF No. 31, PageID.217).

In its response, Homepoint asserted that the pleadings validly established standing and diversity jurisdiction. (ECF No. 33, PageID.266–71). As a result, Mr. Cooper, as successor in interest, could continue the lawsuit without having to independently satisfy subject matter jurisdiction requirements. (*Id.* at PageID.271–75). Thus, Amres' request for dismissal is meritless. (*Id.* at PageID.275).

8

For the reasons explained below, the Court finds that Homepoint had standing and satisfied the elements of diversity jurisdiction at the time it filed the lawsuit. No procedural nor substantive rules require substitution of Mr. Cooper as the named plaintiff or assignment of the claim for Mr. Cooper to continue the lawsuit in Homepoint's name post-merger. Instead, the standing and jurisdictional analysis applies as if Homepoint still existed. Accordingly, the Court will deny Amres' motion to dismiss.

### A. Homepoint has standing to bring its claim.

Because Homepoint has standing to bring its claim, dismissal is inappropriate. Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Standing is an "essential and unchanging part" of Article III's case-or-controversies requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Because "[s]tanding is a jurisdictional requirement," its absence means that the court "lacks subject-matter jurisdiction." *Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019). As a result, Amres' motion to dismiss for lack of standing is properly characterized as a Rule 12(b)(1) motion.

"Standing is determined at the time the complaint is filed." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 580 (6th Cir. 2012); *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011); *Lynch v. Leis*, 382

9

F.3d 642, 647 (6th Cir. 2004). To establish standing, the plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. The Supreme Court defined an "injury in fact" as "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation omitted) (cleaned up).

Homepoint clearly established that it had standing to pursue its claim against Amres. First, Homepoint suffered an injury in fact when Amres, in contravention of the Correspondent Agreement, failed to buyback the Loan or cure its defects. (ECF No. 1, PageID.10). Given Amres' breach resulted in monetary damages over $500,000, (*id.* at PageID.11–12), the harm is both concrete and actual. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."). And the complaint's allegations, when taken as true, undermine Amres' argument that Homepoint's self-inflicted its injury by making a business decision to repurchase the Loan. Instead, Homepoint outlined exactly why Freddie Mac forced the buyback. The Loan violated Freddie Mac's clear guidelines as the underlying property was of the type not saleable to Freddie Mac and the property's

10

Homeowner's Association was embroiled in a lawsuit related to the building's safety. (ECF No. 1, PageID.9–10).

Second, the injury is traceable to Amres' conduct as Amres refused to abide by the terms of the Correspondent Agreement to repurchase or cure the defective Loan it sold and delivered to Homepoint. (ECF No. 1, PageID.10–12). Because Freddie Mac allegedly forced Homepoint to repurchase the Loan based on the defect, the Court can trace Homepoint's monetary harm to Amres' breach. (*Id.*). And third, an award of monetary damages will sufficiently redress the financial harm caused by Amres. (*Id.* at PageID.11). The Court therefore finds that Homepoint sufficiently alleged standing.

Finally, the fact that Homepoint merged into Mr. Cooper does not change the outcome as to whether or not standing exists for the breach of contract claim. As mentioned, standing is determined at the time the complaint is filed. Because the Court already determined that Homepoint had standing at the time it filed its complaint, the analysis ends there.

### B. Mr. Cooper can continue to pursue Homepoint's claim as Homepoint's successor in interest.

Homepoint did not need to substitute Mr. Cooper as the party in interest for Mr. Cooper to pursue Homepoint's breach of contract claim post-merger. Although Amres argued that Federal Rule of Civil Procedure 25(a)(3) warrants dismissal for failure to substitute, (ECF No. 31, PageID.213), Rule 25(a)(3) applies only in

11

situations where a party dies. Rule 25(c), and not Rule 25(a)(3), instead applies here as it governs transfers of interest generally, such as those that occur after a corporate merger. Rule 25(c) states explicitly that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." As the Sixth Circuit clarified, "Rule 25(c) does not require that anything be done after an interest has been transferred." *Blachy v. Butcher*, 221 F.3d 896, 911 (6th Cir. 2000) (citation omitted). Rather, Rule 25(c) is a "procedural device designed to facilitate the conduct of a case" that "does not affect the substantive rights of the parties or the transferee." *Jackson v. Corizon Health, Inc.*, No. 19-13382, 2025 WL 546365, at *2 (E.D. Mich. Feb. 19, 2025) (citation omitted). Thus, neither Homepoint nor Mr. Cooper needed to take any procedural steps for Mr. Cooper to become the successor in interest.

And, importantly, applicable state law substantively authorizes Mr. Cooper to continue the lawsuit.[3] Under Michigan law, "[w]hen a merger takes effect . . . all

---

[3] Because the choice of law clause in the Correspondent Agreement designated Michigan law to apply to disputes "without regard to the conflict of laws principles applied in the State of Michigan," the Court will rely on Michigan law in resolving the effect of the merger. (ECF No. 1-1, PageID.32). To note, the parties also considered Delaware law in this context. (ECF No. 33, PageID.270; ECF No. 34, PageID.285). Delaware's statute, however, reaches the same result as Michigan's statute. *See* Del. Code Ann. tit. 6, § 18-209(g).

12

other choses in action . . . are vested in the surviving company without further act or deed and without reversion or impairment." Mich. Comp. Laws Ann. § 450.4704(1)(b). Given that Homepoint's claim qualifies as a "chose[] in action," it vested in Mr. Cooper once the merger took effect. So, even though Homepoint no longer exists as an independent entity, its claim survives as Mr. Cooper's asset.

The idea that Mr. Cooper must establish its own standing to bring the breach claim is thus inconsistent with how transfers of interest work both procedurally under the Federal Rules and substantively under Michigan law. Accordingly, Mr. Cooper did not need to prove that it suffered an injury from the defective Loan. Ultimately, when Mr. Cooper absorbed Homepoint, Homepoint's claim became another asset, like Homepoint's loans or its office buildings. The circumstances of the claim remain the same despite the merger; the breach involved events that transpired before the merger took effect. As a result, the Court need not consider whether any hypothetical injury Mr. Cooper suffered in connection with the breach establishes standing.

### C. Homepoint adequately established diversity jurisdiction.

Contrary to Amres' argument, the merger did not affect the Court's diversity jurisdiction, specifically as it relates to the amount-in-controversy requirement. (ECF No. 31, PageID.216). Under 28 U.S.C. § 1332(a)(1), federal courts have jurisdiction over civil cases arising between citizens of different states so long as

"the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." Here, Homepoint is a New Jersey corporation with its principal place of business in Michigan, and Amres is a Pennsylvania corporation with its principal place of business in Pennsylvania, (ECF No. 1, PageID.1). *See* § 1332(c)(1). The parties are clearly citizens of different states. As for the amount-in-controversy requirement, generally, "the amount claimed by the plaintiff in the complaint" rules. *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 628 (6th Cir. 2009). Homepoint alleged over $500,000 in damages, (ECF No. 1, PageID.11), which is well over the $75,000 threshold. Mr. Cooper's status as successor in interest does not change the analysis as it is not a party to the lawsuit. Thus, the Court finds that it has diversity jurisdiction.

The Court will briefly address Amres' argument that Homepoint's and Mr. Cooper's failure to file a post-merger amended disclosure statement impacted jurisdiction. (ECF No. 31, PageID.211–12). Federal Rule of Civil Procedure 7.1(a)(2) requires a disclosure statement in actions where jurisdiction is based on diversity under 28 U.S.C. § 1332(a). The statement "must name – and identify the citizenship of – every individual or entity whose citizenship is attributed to that party or intervenor." Fed. R. Civ. P. 7.1(a)(2). In its motion, Amres took umbrage with Homepoint's failure to file an amended disclosure statement after the merger. (ECF No. 31, PageID.210). But Mr. Cooper did file an amended disclosure statement

14

(albeit after Amres moved to dismiss). (ECF No. 35). Considering that Rule 7.1(a)(2) does not define a particular time window for which to file an amended disclosure statement, the Court does not find that Mr. Cooper's delay in doing so warrants dismissal.

And ultimately, it is not clear that Mr. Cooper needed to file an amended disclosure statement. The parties to the litigation did not change despite the merger; neither party moved to substitute Mr. Cooper as the party in interest. The Court therefore presumes that Homepoint remains the named plaintiff. The Court finds unavailing the fact that the amended disclosure statement shows Homepoint no longer exists as a standalone company. As the Court explained previously, both standing and jurisdiction existed at the time Homepoint filed its complaint, and Mr. Cooper may continue the litigation as the successor in interest.

Therefore, for all of the reasons explained above, the Court will deny Amres' motion to dismiss.

* * *

For the reasons given, the Court **ORDERS** that the motion to amend/correct the motion for summary judgment (ECF No. 32) is **GRANTED**.

The Court **FURTHER ORDERS** that Amres' motion to dismiss (ECF No. 31) is **DENIED**.

Dated: August 15, 2025

s/Robert J. White
Robert J. White
United States District Judge